# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **LAURA McELDERRY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 2:18-cv-489-ECM-DAB |
| ) | |
| **RELIANCE STANDARD LIFE** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Laura McElderry, sues Defendant, Reliance Standard Life Insurance Company, for long-term disability benefits and other relief under the terms of her employer's welfare benefit plan for employees pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. (Doc. 1). Before the court is Reliance Standard Life Insurance Company's Motion to Dismiss. (Doc. 6). The parties have had the opportunity to fully brief the matter, and the court heard argument on August 8, 2018. For the reasons set forth below, it is recommended that Defendant's motion to dismiss (Doc. 6) be **granted** and Plaintiff be given the opportunity to amend her Complaint.

**I.     Jurisdiction**

McElderry's complaint invokes the court's original jurisdiction pursuant to 28 U.S.C. §1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts

of the United States where, as here, Plaintiff's claims relate to an employee welfare benefit plan and/or an employee pension plan under ERISA, 29 U.S.C. §§ 1001–1461. The parties do not contest jurisdiction or venue and the court finds sufficient information of record to support both. *See* 28 U.S.C. § 1391. On May 16, 2018, the above-styled matter was referred to the undersigned for recommendation on all pretrial matters by United States District Judge Myron H. Thompson. (Doc. 4); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Bd. of Educ. of State of Ga.,* 896 F.2d 507 (11th Cir. 1990).

## II.     Background and Statement of Facts

Plaintiff Laura McElderry ("McElderry") is a registered nurse who was employed as a Care Manager for Triton. (Doc. 1, ¶ 15). Her responsibilities included home-health nursing, social work, and case management to establish medical care plans for low-income Alabama residents. *Id.* Her occupation was considered a "light" strength demand occupation according to the United States Department of Labor's Dictionary of Occupational Titles. *Id.* ¶ 18.

McElderry worked for Triton from July 11, 2011, through March 18, 2015. *Id.* ¶ 17. During her employment, Triton was the plan sponsor of the group long-term disability plan ("Plan") for its employees. *Id.* ¶ 16. The Plan was underwritten and/or insured by Defendant Reliance Standard Life Insurance Company ("RSL")

and contained a group long-term disability ("LTD") policy providing LTD benefits for employees. *Id.*

On February 9, 2015, McElderry, who was 55 years old at the time, was conducting a home visit with a patient when she fell through a rotten staircase leading into the patient's home. *Id.* ¶ 19. The fall exacerbated McElderry's preexisting medical conditions and resulted in worsening her symptoms. *Id.* ¶¶ 20–22. Following the accident, McElderry was unable to work due to pain and physical inability to function. *Id.* ¶ 23.

McElderry applied for LTD benefits under the Plan on March 25, 2015. *Id.* ¶ 25. RSL approved the benefits effective May 13, 2015, which was the date benefits were first available following the Elimination Period. *Id.* ¶ 26. Under the Plan the definition of "Total Disability" for the first 24 months and the Elimination Period is an injury or sickness in which the insured "cannot perform the material duties of his/her Regular Occupation." *Id.* ¶ 24. After a monthly benefit has been paid for 24 months, "Total Disability" means the insured "cannot perform the material duties of *any* occupation." *Id.* (emphasis added).

A February 8, 2017 claim note stated, "We received an anonymous letter indicating the claimant's activity level is higher than reported." *Id.* ¶ 27. RSL hired an investigator who conducted video surveillance of McElderry March 3 through March 31, 2017. *Id.* ¶ 29. The photographs and video from the investigator

confirmed her stated level of activity, *i.e.*, mostly inactive. *Id.* ¶ 32. Notwithstanding, McElderry states that RSL continued its surveillance beyond its own stated maximums and deviated from its standard procedures at a significant cost. *Id.* ¶¶ 33–36.

By letter dated May 23, 2017, the Social Security Administration ("SSA") found McElderry to be disabled as of February 11, 2015, and she was awarded Social Security disability ("SSDI") benefits retroactively beginning August 1, 2015. *Id.* ¶¶ 37–38. Because the Plan terms provided that LTD benefits are to be offset by any SSDI benefits awarded, RSL contended McElderry was overpaid and sought repayment of LTD payments. *Id.* ¶¶ 40–42. In a June 12, 2017 letter, RSL notified McElderry it was withholding her benefits until they received the repayment. *Id.* ¶ 43. McElderry appealed the amount of the claimed overpayment owed and requested copies of the Plan and other documents reflecting calculation of her benefits. *Id.* ¶¶ 46–47. In July 2017, RSL purportedly produced its entire claim file. *Id.* ¶ 48.

RSL requested and scheduled McElderry to undergo an FCE (Functional Capacity Evaluation). *Id.* ¶ 50. Although the FCE report concluded McElderry could perform sedentary work, the physical assessment results actually supported Plaintiff's inability to work at any exertional level. *Id.* ¶ 52. At RSL's request, the FCE report was amended to state that McElderry could sit and stand frequently,

which McElderry claims still does not support RSL's conclusion that she can perform full-time sedentary exertional work. *Id.* ¶¶ 54–55. Based on the FCE report, McElderry claims RSL prepared a Residual Employability Analysis identifying five occupations she could purportedly do. *Id.* ¶ 58. McElderry submits RSL relied on outdated materials to conduct transferrable skills analyses and otherwise identified positions that RSL had already determined she was incapable of performing. *Id.* ¶¶ 60–65.

On August 3, 2017, RSL agreed its calculations were in error and reduced the amount of the overpayment to the SSDI offset. *Id.* ¶ 66. A week later RSL terminated McElderry's LTD benefits retroactive to May 13, 2017, based upon the medical records on file supporting that she can do full-time sedentary work. *Id.* ¶ 67. McElderry observes there was no physician review of her medical records. Rather, the termination decision appears to be based on McElderry's social media post referencing hiking a difficult six-mile trail and her attendance at yoga classes.[1] *Id.* ¶¶ 69–75.

On August 15, 2017, McElderry again requested copies of claim file materials from RSL since they were last forwarded July 7, 2017. *Id.* ¶ 76. Although RSL

---

[1] An amended termination benefits letter did not include these reasons as a basis for terminating benefits. *Id.* ¶ 79.

produced documents, McElderry contends RSL failed to produce her entire claim file. *Id.* ¶¶ 77–78.

McElderry appealed the termination of her LTD benefits January 25, 2018, and a decision on her appeal was due March 17, 2018. *Id.* ¶¶ 82–83. On March 15, 2018, RSL sought a 45-day extension and requested an independent medical examination of McElderry on March 25, 2018. *Id.* ¶ 84.

On March 17, 2018, McElderry again requested her complete claim file, and RSL produced an additional 1184 pages of material than was previously provided, but it was still incomplete. *Id.* ¶¶ 88, 92. According to McElderry, the production did not include her SSA file or the video surveillance taken of her. *Id.* ¶ 89. RSL produced ten minutes of video, but admitted it did not have the SSA file despite earlier assertions it considered the SSA file as part of its review and determination. *Id.* ¶¶ 90–91. Given the delays in producing documents, untimeliness of the review of the claim, and the misstatements in the termination letter, McElderry requested a different adjuster evaluate her claim. *Id.* ¶¶ 93–95.

McElderry agreed to attend an April 27, 2018 rescheduled independent medical examination ("IME") under certain conditions, but was advised by RSL the examination was rescheduled to May 25 because the doctor was no longer available on April 27, 2018. *Id.* ¶¶ 97–100. RSL additionally refused the conditions requested by McElderry for the rescheduled IME. *Id.* ¶ 102.

MRIs and x-rays taken from 2004 through 2017 demonstrate McElderry's condition was worsening, and her treating physician opined that she is continuously totally disabled. *Id.* ¶¶ 110, 115.  An examination by an independent physician in April 2018 revealed she had limited range of motion in her neck, a pain level of 8 out of 10 which was consistent with recent MRIs and x-ray imaging, obtained only modest relief with pain medication, her condition was worsening with age, and was incapable of full-time employment.  *Id.* ¶¶ 118–22.

McElderry seeks an award of "past benefits due and payable under the terms of the employee welfare benefit plan/insurance policy(ies) and/or pension plan pursuant to 29 U.S.C. § 1132(a)"; "a declaratory judgment as to Plaintiff's entitlement to future benefits and an appropriate order directing the Defendant to pay all similar claims of Plaintiff in the future pursuant to 29 U.S.C. § 1132(a)"; removal of RSL "from its fiduciary role in the administration of The Plan(s), and to appoint a special master at RSL's expense"; an award of fees, costs, interest, and expenses; a statutory penalty award of $110 per day for failure to respond to ERISA production requests pursuant to 29 U.S.C. § 1132(c); and an order enjoining RSL from further breaches of fiduciary duty and directing RSL to exercise reasonable care, skill, and diligence in the administration of McElderry's claim.  (Doc. 1 at 30–31).

RSL moves to dismiss McElderry's claim for future benefits, her claim for equitable relief under 29 U.S.C. § 1132(a)(3), her claim for removal of RSL as fiduciary, her claim for statutory penalties, and her vague request for an order enjoining future breaches. (Doc. 6).

### III.   Standard of Review

Federal Rule of Civil Procedure 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleader must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[D]etailed factual allegations" are not required, but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

### IV.   Analysis

Defendant initially argues that even if McElderry is entitled to LTD benefits the ERISA statute does not permit an award of future disability benefits. (Doc. 7 at 5–7). In her response, McElderry states she is not seeking an award of "future" benefits. (Doc. 15 at 8). Rather, she tries to distinguish her claim, stating it is one

for reinstatement of an ongoing benefit as opposed to a request for a future award of benefits. *Id.* At the hearing, counsel for McElderry acknowledged that a claim for future benefits was not available.

Under ERISA, a claimant may bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Thus, a clarification of her rights to future benefits is permissible, but a blanket declaration of entitlement or award of future benefits would not be. A review of the Complaint reveals that McElderry seeks a declaration of "entitlement to future benefits" and "an order directing [RSL] to pay similar claims to [McElderry] in the future." While her response acknowledges she is not absolved from the responsibility of satisfying the Plan's proof of loss requirement for benefits going forward, her Complaint and prayer for relief are not so clear. Accordingly, RSL's motion to dismiss is due to be **granted** to the extent that the Complaint seeks a declaration or award of future benefits. It is further recommended that Plaintiff be afforded the opportunity to amend her Complaint to clarify her claims for relief in this regard.

Next, RSL argues generally that removal of it as the fiduciary under the Plan is not a cognizable claim under ERISA and is due to be dismissed. (Doc. 7 at 6–8). McElderry responds that this aspect of her requested relief seeks the equitable

9

remedy of compelling RSL to fairly honor its obligations or otherwise be replaced. (Doc. 15 at 9). RSL is correct that the language of § 1132(a)(1)(B)[2] does not specifically provide for the removal of a fiduciary, but its response acknowledges other provisions under the statute can provide for such equitable relief. RSL contends McElderry's claim for equitable relief nevertheless fails. The court agrees and addresses the two issues together below.

In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court held that while individual plan participants could assert claims for equitable relief under § 1132(a)(3), they may do so only where no appropriate relief was available under ERISA's other civil enforcement provisions. *Id.* at 512 (describing § 1132(a)(3) as a "catch all" provision). The Eleventh Circuit has applied *Varity* to hold an ERISA plaintiff cannot alternatively plead claims under § 1132(a)(3) where § 1132(a)(1)(B) provides an adequate remedy. *See Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1988-89 (11th Cir. 1999).

In the factually similar case of *Beckham v. Liberty Life Assurance Co. of Boston*, 4 F. Supp. 3d 1266 (M.D. Ala. 2014), the plaintiff sought relief under 29 U.S.C. § 1132(a)(1) for disability benefits and declaratory judgment, and additionally sought removal of Liberty Life from its fiduciary role in the

---

[2] Section 1132(a)(1)(B) provides: "A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

administration of the Plan and for the appointment of a special master to replace Liberty Life as the decision maker for benefit determinations. *Id.* at 1268–69. The plaintiff argued that relief under § 1132(a)(1)(B) does not automatically foreclose equitable relief under § 1132(a)(3).[3]  *Id.*  The plaintiff asserted a claim for benefits under § 1132(a)(1)(B), but argued that equitable relief in the form of a surcharge, appointment of a special master, and an injunction was also necessary to provide adequate relief. Rejecting plaintiff's argument, the court held that plaintiff "cannot simply recast her benefits claim as one for equitable relief, and proceed on that alternative theory." *Id.* at 1270.  The *Beckham* court observed "it is the facts upon which a claim is based, rather than the relief requested, which is controlling." *Id.* at 1269 (citing *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065 (11th Cir. 2004)).

In reviewing the pleadings here, the harm complained of is the denial of benefits.  Like the *Beckham* plaintiff, McElderry seeks equitable relief for the fiduciary's application of the Plan which resulted in a denial of benefits, as opposed to any misrepresentation regarding the terms of the Plan. *See Beckham*, 4 F. Supp. 3d at 1270–71 (distinguishing *Cigna Corp. v. Amara*, 563 U.S. 421 (2011), in which

---

[3] Section 1132(a)(3) states: "A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to address such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

the Court granted equitable relief of reformation of the plan to remedy the fiduciary's misrepresentations regarding the terms of the plan). As noted by RSL, McElderry alleges multiple procedural violations committed by RSL. Such violations relate to the processing of the claim and application of the Plan. McElderry's claim for benefits provides a remedy for the harms alleged. "[F]ollowing *Varity*, federal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)." *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287 (11th Cir. 2003) (citations omitted). Accordingly, it is recommended that the motion to dismiss be **granted** as it pertains to McElderry's claim for equitable relief.

RSL next argues that McElderry's claim for statutory penalties pursuant to 29 U.S.C. § 1132(c) due to RSL's failure to comply with ERISA production requests is due to be dismissed. (Doc. 7 at 10–13). Specifically RSL submits that the statute relied on does not apply to RSL, who is not the Administrator of the Plan, and is not applicable to requests for claims files in any event. *Id.* McElderry responds that RSL is the *de facto* Administrator and thus could be held liable for statutory penalties. (Doc. 15 at 15–21). Additionally, McElderry contends that statutory penalties can be assessed for a failure to produce claims manuals, guidelines and protocols that are used to direct, interpret or control the Plan documents.


Under 29 U.S.C. § 1132(c), it is within the court's discretion to award a monetary penalty per day based on an administrator's failure to comply with a participant or beneficiary's request for plan documents. *See* 29 U.S.C. § 1021(a) ("The administrator of each employee benefit plan shall cause to be furnished in accordance with section 1024(b) of this title to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan-- (1) a summary plan description described in section 1022(a)(1) of this title ..."). Additionally, the statutory penalty may be assessed against an administrator "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary." 29 U.S.C. § 1132(c)(1). The Eleventh Circuit has clarified that the statute only permits an award of penalties against the *plan administrator*. *See Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1270 (11th Cir. 2008). McElderry explains in her response that RSL should be considered a *de facto* Administrator, but her Complaint plainly alleges her employer Triton administered the Plan, *see* (Doc. 1, ¶ 16), and she asserts no allegations to support RSL was the Plan Administrator. Thus, the statute does not apply to RSL who was not the administrator of the Plan.

Even if McElderry could amend to allege RSL's status as a *de facto* Administrator, her claim would likely fail as case law does not support an award of statutory benefits for a failure to produce claim file materials, as opposed to formal

13

plan documents. *See Fox v. Blue Cross & Blue Shield of Fla. Inc.*, 517 F. App'x 754, 757 (11th Cir. 2013) (citing with approval, *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079 (8th Cir. 2009) ("Nothing in [ERISA] requires plan administrators to disclose claims manuals to plan participants.")). Accordingly, it is recommended that RSL's motion be **granted** on this issue.

Lastly, RSL contends that McElderry's request for an order enjoining future breaches of fiduciary duties and a request for unspecified additional benefits under the Plan are due to be dismissed as vague and unsupported. The court agrees and recommends Plaintiff be permitted to amend her Complaint to submit a short and plain statement focused on her benefits claim. As discussed above, McElderry may not simply attempt to recast her benefits claim as one for equitable relief.

## V. Recommendation

Accordingly, for the reasons stated, it is **recommended** that Reliance Standard Life Insurance Company's Motion to Dismiss (Doc. 6) be **granted** and McElderry be permitted leave to file an Amended Complaint to focus her allegations on her claim for benefits and clarify the remedies sought. Once the District Judge has acted on this Report and Recommendation and the case is at issue, the parties should be directed to file a Rule 26 case planning report so that the case may be scheduled for appropriate disposition, by trial or otherwise.

## VI. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Accordingly, it is hereby **ORDERED** that any objections to the Report and Recommendation shall be filed on or before **November 21, 2018**. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; see also 28 U.S.C. § 636(b)(1).

**Respectfully recommended** this 7th day of November, 2018.

_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE